**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION**

| | |
|---|---|
| LONNIE C. FENNER, | |
| Claimant, | No. 20-CV-2026-LRR |
| vs. | |
| ANDREW M. SAUL,<br>Commissioner of Social Security, | **REPORT AND<br>RECOMMENDATION** |
| Defendant. | |

_____

Lonnie C. Fenner ("Claimant") seeks judicial review of a final decision of the Commissioner of Social Security ("the Commissioner") denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. Sections 401-34. Claimant contends that the Administrative Law Judge ("ALJ") erred in determining that he was not disabled. For the reasons that follow, I recommend that the Commissioner's decision be **affirmed in part and reversed and remanded in part**.

## I.    BACKGROUND

I adopt the facts set forth in the Parties' Joint Statement of Facts (Doc. 13) and only summarize the pertinent facts here. Claimant was born August 15, 1981. (AR[1] at 172.) Claimant has at least a high school education and is able to communicate in English. (*Id.* at 26.) He allegedly became disabled due to migraines, a learning disability, and seizures. (*Id.* at 220.) Claimant's onset of disability date was April 24, 2017. (*Id.* at

_____

[1] "AR" cites refer to pages in the Administrative Record.

172.)  Claimant filed an application for DIB on May 15, 2017.  (*Id.* at 14.)  His claim was denied originally and on reconsideration.  (*Id.* at 93-96, 101-04.)  A video hearing was held on March 28, 2019, with Claimant and his attorney, Hugh Field, in Waterloo, Iowa and ALJ Tom Andrews presiding from West Des Moines, Iowa.  (*Id.* at 35-63.) Vocational expert ("VE") Julie Svec also appeared at the hearing.  (*Id.* at 37.)  Claimant and the VE testified.  (*Id.* at 40-62.)  The ALJ issued an unfavorable decision on June 20, 2019.  (*Id.* at 14-28.)

Claimant requested review and the Appeals Council denied review on February 11, 2020.  (*Id.* at 1-3.)  Accordingly, the ALJ's decision stands as the final administrative ruling in the matter and became the final decision of the Commissioner.  *See* 20 C.F.R. § 416.1481.

On April 13, 2020, Claimant timely filed his complaint in this Court.  (Doc. 4.) On January 8, 2021, briefing deadlines expired and the Honorable Linda R. Reade referred the case to me for a Report and Recommendation.

## II.    *DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF*

A disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A claimant has a disability when, due to physical or mental impairments, the claimant

> is not only unable to do [the claimant's] previous work but cannot, considering [the claimant's] age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).  A claimant is not disabled if the claimant is able to do work that exists in the national economy but is unemployed due to an inability

Case 6:20-cv-02026-LRR-MAR    Document 19    Filed 05/05/21    Page 2 of 49

to find work, lack of options in the local area, technological changes in a particular industry, economic downturns, employer hiring practices, or other factors. 20 C.F.R. § 404.1566(c).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows the five-step sequential evaluation process outlined in the regulations. *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003). At steps one through four, the claimant has the burden to prove he or she is disabled; at step five, the burden shifts to the Commissioner to prove there are jobs available in the national economy. *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009).

At step one, the ALJ will consider whether a claimant is engaged in "substantial gainful activity." *Id.* If so, the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i). "Substantial activity is significant physical or mental work that is done on a full- or part-time basis. Gainful activity is simply work that is done for compensation." *Dukes v. Barnhart*, 436 F.3d 923, 927 (8th Cir. 2006) (citing *Comstock v. Chater*, 91 F.3d 1143, 1145 (8th Cir. 1996); 20 C.F.R. § 416.972(a),(b)).

If the claimant is not engaged in substantial gainful activity, at step two, the ALJ decides if the claimant's impairments are severe. 20 C.F.R. § 416.920(a)(4)(ii). If the impairments are not severe, then the claimant is not disabled. *Id.* An impairment is not severe if it does not significantly limit a claimant's "physical or mental ability to do basic work activities." *Id.* § 416.920(c). The ability to do basic work activities means the ability and aptitude necessary to perform most jobs. *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987) (quoting 20 C.F.R. §§ 404.1521(b), 416.921(b)). These include the following abilities:

> (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to

3

supervision, co-workers, and usual work situations; and (6) dealing with
changes in a routine work setting.

*Id.* (quotation omitted) (numbers added; internal brackets omitted).

If the claimant has a severe impairment, at step three, the ALJ will determine the
medical severity of the impairment. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment
meets or equals one of the impairments listed in the regulations ("the listings"), then "the
claimant is presumptively disabled without regard to age, education, and work
experience." *Tate v. Apfel*, 167 F.3d 1191, 1196 (8th Cir. 1999) (quotation omitted).

If the claimant's impairment is severe, but it does not meet or equal an impairment
in the listings, at step four, the ALJ will assess the claimant's residual functional capacity
("RFC") and the demands of the claimant's past relevant work. 20 C.F.R. §
416.920(a)(4)(iv). RFC is what the claimant can still do despite his or her limitations.
*Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (citing 20 C.F.R. §§
404.1545(a), 416.945(a)). RFC is based on all relevant evidence and the claimant is
responsible for providing the evidence the Commissioner will use to determine the RFC.
*Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). "Past relevant work" is
any work the claimant performed within the fifteen years prior to this application that
was substantial gainful activity and lasted long enough for the claimant to learn how to
do it. 20 C.F.R. § 416.960(b)(1). If a claimant retains enough RFC to perform past
relevant work, then the claimant is not disabled. *Id.* § 416.920(a)(4)(iv).

At step five, if the claimant's RFC will not allow the claimant to perform past
relevant work, then the burden shifts to the Commissioner to show there is other work
the claimant can do, given the claimant's RFC, age, education, and work experience.
*Id.* §§ 416.920(a)(4)(v), 416.960(c)(2). The ALJ must show not only that the claimant's
RFC will allow the claimant to do other work, but also that other work exists in significant
numbers in the national economy. *Eichelberger*, 390 F.3d at 591 (citation omitted).

*A.*     ***The ALJ's Findings***

The ALJ made the following findings regarding Claimant's disability status at each step of the five-step process. At step one, the ALJ found that Claimant had not engaged in substantial gainful activity since his alleged onset of disability date of April 24, 2017 (AR at 16.) Although Claimant had earnings after the alleged onset date, the ALJ found they did not rise to the monthly substantial gainful activity income amounts. (*Id.*)

At step two, the ALJ found that Claimant suffered from the following severe impairments: "history of pseudoseizures; history of reported headaches; and unspecified neurocognitive disorder with testimony exhibiting a significant stutter." (*Id.*) The ALJ found changes in Claimant's cervical and thoracic spines and obesity to be nonsevere impairments. (*Id.* at 17.) In addition, the ALJ found Claimant's alleged borderline intellectual functioning was not a medically determinable impairment. (*Id.* at 16-17.)

At step three, the ALJ found that Claimant did not have an impairment or combination of impairments that met or equaled a presumptively disabling impairment listed in the regulations, either when considered singly or in combination. (*Id.* at 17.)

The ALJ evaluated Claimant's claims under listings 11.02 (epilepsy)[2]; 12.02 (neurocognitive disorders); and 12.11 (neurodevelopmental disorders). (*Id.*)

At step four, the ALJ found that Claimant had the following RFC:

[T]he claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: never climb ladders, ropes, or scaffolds; no more than occasional exposure to respiratory or pulmonary irritants such as fumes, odors, dusts, and gases; no exposure to the sorts of hazards presented by unprotected heights, elevations, or dangerous or unguarded moving

---

[2] Migraines are evaluated under the Listing for epilepsy. *See* Social Security Ruling 19-4p: Titles II and XVI: Evaluating Cases Involving Primary Headache Disorders ("Epilepsy (listing 11.02)).

machinery or parts; no exposure to loud noise, for instance, a loud can manufacturing plant or along heavy earth moving equipment would be inappropriate; and is limited to unskilled work.

(*Id.* at 18-19.)

The ALJ also found that Claimant was able to perform his past relevant work as an unloader/stocker (*DOT* code 922.687-058, unskilled), both as he actually performed it and as the job is generally performed. (*Id.* at 25-26.) The ALJ noted that the VE testified that Claimant performed this position at a very heavy exertional level, while the *Dictionary of Occupational Titles* indicates the job is generally performed at a medium exertional level. (*Id.* citing AR 355).) The ALJ also stated that after the hearing, he added an "unskilled work" limitation to the RFC. (*Id.* at 26.)

In the alternative, at step five, the ALJ found there were also jobs that existed in significant numbers in the national economy Claimant could perform, including laundry worker and packager. (*Id.*) The ALJ continued:

> The claimant's representative objected to these job numbers on the ground that the vocational expert's methodology for determining numbers of jobs is not reliable. The undersigned overrules this objection. The vocational expert has professional knowledge and experience in job placement. With regard to the objection, the claimant's representative appears to have objected to the overall process by which the Commissioner establishes whether significant jobs exist in the national or regional economy. While the DOT has not been updated recently, the undersigned is bound by the Social Security regulations that specifically require its use. The undersigned also requested the participation and opinion of a vocational witness in the hearing process to ensure that the vocational evidence used in deciding the claimant's case was up-to-date as to job tasks and availability. Testimony of a vocational expert is used nationwide and is expressly allowed by the regulations. The undersigned finds the vocational expert's explanation and professional expertise more than sufficient to support the finding of significant jobs in the national economy.

(*Id.* at 27.) Therefore, the ALJ concluded that Claimant was not disabled. (*Id.*)

6

## B.    *The Substantial Evidence Standard*

The ALJ's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Moore*, 572 F.3d at 522. "The phrase 'substantial evidence' is a 'term of art' used throughout administrative law. . . . [T]he threshold for such evidentiary sufficiency is not high. . . . It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations and quotations omitted). Thus, a court cannot disturb an ALJ's decision unless it falls outside this available "zone of choice" within which the ALJ can decide the case. *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006) (citation omitted). The decision is not outside that zone of choice simply because the court might have reached a different decision. *Id.* (citing *Holley v. Massanari*, 253 F.3d 1088, 1091 (8th Cir. 2001)); *Moore*, 572 F.3d at 522 (holding that the court cannot reverse an ALJ's decision merely because substantial evidence would have supported an opposite decision).

In determining whether the Commissioner's decision meets this standard, the court considers all the evidence in the record, but does not reweigh the evidence. *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). A court considers both evidence that supports the ALJ's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court must "search the record for evidence contradicting the [ALJ's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

## III.    DISCUSSION

Claimant alleges the ALJ committed reversible error by (A) failing to provide good reasons for the weight afforded to opinions of the consultative examining

7

psychologists; (B) failing to fully and fairly develop the record; (C) failing to provide good reasons for finding he was not credibly reporting his limitations; and (D) presenting a deficient hypothetical question to the VE.

## A. Whether the ALJ Properly Evaluated the Opinions of the Consultative Examining Psychologists

Claimant was examined by two psychologists at the request of the state agency. In August 2017, Claimant was examined by Seth Brown, Ph.D. and in March 2019, Claimant was examined by John Williams, Ph.D. (AR at 748-51, 1022-28.) Claimant takes issue with the ALJ's evaluation of these opinions.

### 1. Opinion of Seth Brown, Ph.D.

On August 8, 2017, Dr. Brown conducted an abbreviated psychological evaluation of Claimant. (AR at 748.) Dr. Brown administered the Mini-Mental State Examination ("MMSE") and interviewed Claimant. (*Id.*) Dr. Brown noted that although Claimant was odorous, had an unkempt beard, and marginal grooming and hygiene, he was appropriately dressed, was pleasant and cooperative, voiced an adequate understanding of the purpose and procedure of the evaluation, and completed all tasks. (*Id.*) Claimant also had no gross motor or sensory impairments, had good eye contact, clear and articulate speech that was logically construed, and easily established rapport. Claimant's emotional expressions were within normal limits and were appropriate to speech content. (*Id.*) Claimant expressed no paranoid or other delusional material during the evaluation. (*Id.*) Claimant "denied a number of symptoms indicative of any mood, anxiety, or psychotic disorder" and reported no self-injury behavior or problems regulating his emotions. (*Id.*) Although Claimant said he has problems with concentration, and therefore chooses to cook microwave meals, he reported no difficulties with personal hygiene, showering, or cleaning and maintaining his home or doing laundry. (*Id.*) Claimant has a driver's license, but his wife will not let him drive due to his

pseudoseizures. (*Id.*) Claimant stated he is unable to count money or budget well because he spends money haphazardly. (*Id.*)

Claimant reported that his last job was as a truck unloader/stocker at a large retailer for over nine years. (*Id.*) During his last months of employment, Claimant stated that he often missed work due to migraines and needed frequent reminders to carry out new tasks, even though he generally understood his job requirements. (*Id.*) Claimant indicated that he was able to maintain his concentration and keep up with the pace of work expected of him, but stated there was "some tension with his boss in regard to his missed days at work. He reported no difficulties getting along with coworkers or customers and reported using sound judgement. He did indicate that he had some difficulties adapting to changes in the workplace." (*Id.*) Claimant scored 17/30 on the MMSE, which placed him in the clinically-impaired range compared to peers of similar age and education. (*Id.* at 750.) Dr. Brown summarized his findings in the following way:

> [Claimant] may have memory difficulties and possible seizure-like activity due to . . . migraine headaches. Therefore, a more careful review of any neurological records would be recommended. In regard to the brief neurocognitive testing administered during this evaluation, he did evidence clinical impairment but more thorough neurological and possible intellectual testing is recommended for further details. Surprisingly, Mr. Fenner does not appear to have any significant psychiatric difficulties at this time.
>
> In regard to daily functioning Mr. Fenner appeared to need some assistance in a variety of areas at home. This includes meal preparation, transportation, and money management. In regard to the latter, he would likely benefit from some type of assistance in managing his financial affairs. In regard to work history, over time he appears to have adapted to his previous workplace but did report some difficulties learning new tasks and autonomously transporting himself to the worksite.

(*Id.*)

The ALJ evaluated Dr. Brown's opinion in the following way:

> The undersigned finds this opinion is somewhat supported by the evidence of record and consistent with the documented symptoms. Despite the claimant's allegations of headaches and seizure-like symptoms, the evidence of record showed no evidence of a significant epileptiform discharge, focal abnormalities, or intracranial abnormalities (Exhibit 2F, page 67; Exhibit 9F, pages 7, 23, 43; Exhibit 14F, pages 5, 7, 14; Exhibit 15F, page 7). In addition, neurocognitive testing showed some deficits (Exhibits 6F, 16F). Despite this, the claimant indicated that he generally understood his previous job requirements and had no difficulty getting along with coworkers or customers. Moreover, his memory, attention span, concentration, and fund of knowledge were normal at other times (Exhibit 9F, page 39; Exhibit 12F, page 3; Exhibit 13F, page 4). He generally presented as alert and oriented with a normal mood and affect (Exhibit 5F, pages 30, 33; Exhibit 9F, page 4; Exhibit 11F, page 4; Exhibit 13F, page 4; Exhibit 14F, page 19). Accordingly, the undersigned finds this opinion is only somewhat consistent with and supported by the evidence of record.

(*Id.* at 24.)

### a. *The Parties' Arguments*

Claimant argues that the ALJ failed to articulate good reasons for finding Dr. Brown's opinion only "somewhat consistent with and supported by the evidence of record" and that remand is required to allow the ALJ to provide a "proper explanation[] for the weight afforded." (Doc. 14 at 16.) Claimant asserts that Dr. Brown's opinion is consistent with the opinions of the reviewing consulting psychologists' opinions "that limited Mr. Fenner to the most basic of work as [they] concluded Mr. Fenner was limited to 'simple 1-2 step instructions and perform [sic] simple, routine repetitive work tasks.'" (*Id.*) He also argues that Dr. Brown's opinion is consistent with the record as a whole and that Dr. Brown cited objective medical evidence to support his opinion. (*Id.*) Claimant takes particular issue with the ALJ's conclusion that "his memory, attention span, concentration, and fund of knowledge were normal" on exam. (*Id.*)

10

The Commissioner responds that Claimant's arguments are based on a fundamental misreading of the regulations. (Doc. 16 at 9.) The Commissioner states that "[c]ontrary to plaintiff's argument, ALJs are charged with addressing the persuasiveness of opinion evidence and considering the factors of supportability and consistency in doing so. . . . [and] the ALJ specifically addressed the persuasiveness of [the opinion] in finding [it was] somewhat consistent with and supported by the evidence of record, but could not be fully credited." (*Id.*) (citing 20 C.F.R. § 404.1520c(b)(2)).)

### b.    Analysis

Claimant's claim was filed on or after March 27, 2017. Therefore, the rules articulated in 20 C.F.R. Sections 404.1520c and 416.920c apply to analysis of this opinion. Under these rules, no medical opinion is automatically given controlling weight. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Rather, the ALJ must explain how persuasive he or she finds a medical opinion. *Id.* §§ 404.1520c(b), 416.920c(b). The persuasiveness of opinions from medical sources are evaluated using the following factors: (1) supportability, (2) consistency, (3) provider's relationship with the claimant, (4) specialization, and (5) other factors. *Id.* §§ 404.1520c(c), 416.920c(c). Supportability and consistency are the most important factors when determining "how persuasive the ALJ find[s] a medical source's medical opinions . . . to be." *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2). The ALJ "may, but [is] not required to, explain how [he or she] considered the factors in paragraphs (c)(3) through (c)(5). . . ." *Id.*

### i.    Supportability

"The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(1); 416.920c(c)(1).

Claimant argues that Dr. Brown "provided objective medical evidence and explanations to support [his] opinions." (Doc. 14 at 15 (making argument on behalf of opinions of both Dr. Brown and Dr. Williams).) The Commissioner does not rebut this argument.

Indeed, Dr. Brown cited Claimant's score of 17/30 on the MMSE, which Dr. Brown described as "a brief measure of cognitive functioning that is only used for screening purposes and detects only moderate to severe cognitive impairment. The MMSE has been used in a variety of settings and provides normative scores based on both age and years of education." (AR at 750.)

Thus, while Dr. Brown cited Claimant's MMSE scores, he also noted that the examination was used only for screening purposes, which, of course, is understandable given the time constraints of a consulting examination. Dr. Brown was not given any background records to review prior to examining Claimant. (*Id.* at 748.) Dr. Brown also recommended a more careful review of neurological records and both neurological and, possibly, intellectual testing, which indicates that he understood the limits of his own testing. (*Id.* at 750.)

Therefore, this factor weighs only slightly in favor of finding the opinion more persuasive.

### ii. *Consistency*

"The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(2); 20 C.F.R. § 416.920c(c)(2).

Claimant argues that his cognitive issues "did not come up out of the blue." (Doc. 14 at 16.) Claimant asserts that his "intelligence and attention issues are longstanding." (*Id.*) Claimant cites school records from his middle and high school years showing that

he had difficulties in both special education and regular classes.  (*Id.* (citing AR 285-87, 306-08, 320-21).)  Claimant notes that the ALJ did not discuss his educational record in the decision.  (*Id.*)  Claimant then asserts that "[c]oncerning the record generally, when a provider paid attention, he noted the following: 'He likely has some decreased intellectual level.'" (*Id.* (citing AR at 474).)  Thus, Claimant argues that the ALJ played doctor by "assigning undue importance to 'normal' examination findings in the record" while disregarding the opinion of an examining psychologist who supported his opinion with testing and an examination, which is further supported by Claimant's school records. (*Id.* (citing *Combs v. Berryhill*, 878 F.3d 642, 647-48 (8th Cir. 2017).)[3]

The Commissioner responds that an opinion such as Dr. Brown's "simply stating that plaintiff would have memory. . . difficulties without further elaboration, [is] of limited value." (Doc. 16 at 10 (citing *Piepgras v. Chater*, 76 F.3d 233, 236 (8th Cir. 1996).)

I note that the ALJ acknowledged that testing administered by both Dr. Brown and Dr. Williams showed Claimant had some neurocognitive deficits.  (AR at 24.)  The ALJ also acknowledged Claimant's decreased intellectual level by limiting him to unskilled work.  (*Id.* at 19.)  Thus, in spite of the ALJ not mentioning school records that were at least 17-years-old in his decision, the ALJ acknowledged Claimant's neurocognitive deficits.  In addition, Claimant's attorney mentioned Claimant's  participation in special education in his opening remarks at the hearing. The ALJ was aware of this fact at least by virtue of his participation in the hearing.  (*Id.* at 39.)  More importantly, the ALJ's failure to mention these records in his decision does not mean the ALJ did not consider them when making his decision.  *See Wildman v. Astrue*, 596 F.3d 959, 966 (8th Cir.

---

[3] Claimant does not take issue with the ALJ's conclusions related to Claimant's headaches or seizure-like symptoms in his evaluation of Dr. Brown's opinion.  (AR at 24.)

2010) ("[A]n ALJ's failure to cite specific evidence does not indicate that such evidence was not considered.") (quoting *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998)).

The ALJ noted that Claimant's memory, attention span, concentration, and fund of knowledge were normal and that he generally presented as alert and oriented with a normal mood and affect. (*Id.* at 24 (citing AR at 716, 719, 789, 824, 889, 929, 943, 984).) These findings are supported by the record as a whole.

On mental status examinations, Claimant not only presented with normal mood, affect, and behavior, but importantly with normal/intact memory and thought content, even when he complained of headaches. (*E.g. id.* at 22-24; 582-83, 653-54, 824, 873, 891, 899, 984.) The ALJ noted that when Claimant was discharged from the Mayo Clinic in March 2018 for treatment of his headaches/pseudoseizures, his physician noted that Claimant was "ready to learn and had no apparent learning barriers." (*Id.* at 23, 785.) Claimant's preferred way of learning was listening. (*Id.*)

Moreover, Claimant ignores the portion of Dr. Brown's opinion that states that although Claimant reported "some difficulties learning new tasks," he "appears to have adapted to his previous workplace." (*Id.* at 751.) The records supports this part of the opinion. Claimant stated he generally understood the requirements of his job and could maintain his concentration at work and keep up the pace necessary to fulfill his job duties, but needed reminders to learn new tasks. (*Id.* at 749.) Claimant's former supervisor stated that Claimant completed all his job duties without extra supervision, frequent rest periods, or easier duties, and worked at 100% productivity compared to other employees in the same position. (*Id.* at 216-18.) Thus, the weight of the record as a whole supports the ALJ's decision on this issue.

Claimant also argues that Dr. Brown's opinion is consistent with the opinions of the reviewing consulting psychologists "that limited Mr. Fenner to the most basic of work as the agency psychological consultants concluded Mr. Fenner was limited to "simple 1-

2 step instructions and perform [sic] simple, routine repetitive work tasks. (TR 90)."
(Doc. 14 at 15.) Claimant neither cites evidence in support of this argument nor draws
analogies between Dr. Brown's opinion and the opinions of the reviewing consulting
psychologists that will aid the Court in understanding how the opinions are consistent.
His entire argument is reproduced in the previous sentence. Thus, the argument is
underdeveloped and will not be addressed. *See Singer v. Harris*, 897 F.3d 970, 980 (8th
Cir. 2018) (holding that when plaintiff did not direct the court to a place in the record
where it could find alleged errors, the court would only consider the arguments that were
supported by appropriate citations) (citing *Manning v. Jones*, 875 F.3d 408, 410 (8th Cir.
2017)); *Aulston v. Astrue*, 277 F. App'x 663, 664-65, 2008 WL 2066019 (8th Cir. 2008)
(declining to address underdeveloped argument) (citing *SmithKline Beecham Corp. v.
Apotex Corp.*, 439 F.3d 1312, 1320 (Fed. Cir. 2006) (collecting cases for proposition
that undeveloped arguments are waived)); *Rotskoff v. Cooley*, 438 F.3d 852, 854–55 (8th
Cir. 2006) (considering undeveloped argument "abandoned for failure to provide any
reasons or arguments for his contentions") (quotation omitted). *see also ASARCO, LLC
v. Union Pac. R.R. Co.,* 762 F.3d 744, 753 (8th Cir. 2014) ("Judges are not like pigs,
hunting for truffles buried in briefs or the record.") (noting internal quotation marks
omitted); *Perrigo v. Colvin*, No. 12-CV-4102-DEO, 2014 WL 1234479, at *7 n.3 (N.D.
Iowa Mar. 25, 2014) (same) (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th
Cir. 1991)).

I do note, however, that the ALJ found the opinions of reviewing consulting
psychologists Jennifer Ryan, Ph.D. and Lon Olson, Ph.D. "generally supported by the
longitudinal medical evidence of record and consistent with the treatment and stability of
symptoms documented since the alleged onset date." (AR at 25.) In so doing, the ALJ
found the opinions regarding Claimant's memory and concentration, issues Claimant
argues about in his brief, generally supported by medical evidence by citing to the same

evidence he cited to discount those parts of Dr. Brown's opinion and evaluated above. (*Id.* at 24 (citing (citing AR at 716, 719, 789, 824, 889, 929, 943, 984).)   Thus, Claimant's argument is not consistent with the opinions of Drs. Ryan and Olson because the evidence the ALJ used to find their opinions generally supported by the record was also used to show the weaknesses in Dr. Brown's opinion.

Finally, Claimant asserts that the ALJ "played doctor" by "assigning undue importance to 'normal' examination findings in the record" while "disregarding" Dr. Brown's opinion.  (Doc. 14 at 16.)   For support, Claimant cites *Combs v. Berryhill*, in which the Eighth Circuit found the ALJ impermissibly relied "on his own inferences as to the relevance of the notations 'no acute distress' and 'normal movement in all extremities' [in the treatment notes of the claimant's treating physician] when determining the relative weight to assign" to conflicting reviewing physicians' opinions.  878 F.3d 642, 646-47 (8th Cir. 2017).   *Combs* reasoned that in light of the claimant's history of rheumatoid arthritis, the relevance of the two notations was unclear and remand was necessary for the ALJ to investigate the claimant's ability to function in the workplace. *Id*. at 647. *Combs* can be distinguished from the instant case because the ALJ in this case did not interpret unclear treatment notes.   Instead, he fulfilled his duty to weigh the evidence in the record.   As discussed above, that evidence shows that Claimant had generally normal mental status examinations, including normal memory assessments. The ALJ did not place undue importance on those assessments.   Rather, healthcare professionals made the assessments.   The ALJ merely weighed them along with other evidence in the record, including Claimant's ability to fulfill his job duties.   Furthermore, the ALJ did not "disregard" Dr. Brown's opinion, repeatedly citing it in the opinion as proof of Claimant's neurocognitive deficits, and finding the opinion somewhat consistent with and supported by the evidence of record.  (AR at 22-25.)

This factor does not weigh in favor of finding the opinion more persuasive.

### c. Conclusion

On balance, although one of the two most important factors weighs in favor of finding Dr. Brown's opinion more persuasive and one factor does not weigh in favor of finding his opinion more persuasive, the weight of the record as a whole is still paramount. Thus, consistency weighs more heavily in the analysis. I therefore recommend the District Court affirm the ALJ's decision on this issue. *See Hacker*, 459 F.3d at 936 (ALJ's decision cannot be disturbed if it falls within the available zone of choice within which he can decide the case).

### 2. The Opinion of John Williams, Ph.D.

On March 4, 2019, John Williams, Ph.D., examined Claimant to assess his cognitive, intellectual, and memory functioning. (AR at 1022.) Dr. Williams administered Claimant several tests. In relevant part, Claimant's I.Q. and memory scores were extremely low. (*Id.* at 1025-26.) Dr. Williams opined that Claimant appeared "to be experiencing significant general deficits with memory compared to others his age. This deficit is likely to cause difficulty remembering verbal instructions, procedures, and learning verbally presented material." (*Id.* at 1026.) He opined that test results indicated Claimant would have the most difficulty in work and academic settings and would have difficulty living independently without some level of supervision. (*Id.* at 1025.) Dr. Williams stated that the results of his assessment were consistent with Dr. Brown's diagnosis of unspecified neurological disorder with a rule out of borderline intellectual functioning. (*Id.* at 1028.) Dr. Williams concluded

> Mr. Fenner appears to have limited ability to retain and recall auditory and verbal information, this will impact his ability to understand and follow instructions and procedures. He is likely to be able to follow instructions and learn tasks with hands-on training and supervision. His ability to interact appropriately with others and handle stress appears adequate for

most situations. However, he reports increased anxiety around groups of people and issues with frustration tolerance and irritability.

(*Id.*)

The ALJ considered the persuasiveness of Dr. Williams's opinion and found the opinion somewhat supported by the medical evidence of record and consistent with the documented symptoms. The ALJ again acknowledged that neurocognitive testing showed that Claimant had some deficits and that he showed deficits in testing. (*Id.* at 25 (citing Dr. Brown's and Dr. Williams's examinations).) He noted, however, that at other times, Claimant's memory, attention span, concentration, and fund of knowledge were normal. (*Id.* (citing AR at 824, 929, 943).) Thus, the ALJ found that the opinion was only somewhat consistent with and supported by the evidence in the record.

### a. *Supportability*

"The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(1); 416.920c(c)(1).

Claimant argues that Dr. Williams "provided objective medical evidence and explanations to support [his] opinions." (Doc. 14 at 15 (making argument on behalf of opinions of both Dr. Brown and Dr. Williams).) The Commissioner does not rebut this argument.

In addition to a "clinical interview" of Claimant, Dr. Williams administered the Wechsler Adult Intelligence Scale - Fourth Edition (WAIS – IV) and the Wechsler Memory Scale – Fourth Edition (WMS – IV). (AR at 1022.) Dr. Williams included the results of these testing instruments in his opinion, along with his interpretations of the scores. (*Id.* at 1024-27.) Unlike Dr. Brown, Dr. Williams did not state that the Weschler

testing instruments were limited in their usefulness. Therefore, this factor weighs in favor of finding the opinion more persuasive.

### b. Consistency

"The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(2); 20 C.F.R. § 416.920c(c)(2).

Claimant relies upon the same arguments he made regarding Dr. Brown's opinion to assert that remand is necessary for the ALJ to reevaluate the persuasiveness of Dr. Williams's opinion. (Doc. 14 at 13-16.)

For the reasons discussed above, the record as a whole supports Dr. Williams's opinion in the same way as it supports Dr. Brown's opinion. Although Dr. Williams documented memory deficits and opined that these deficits would cause Claimant difficulties in work situations, the record as a whole reflected generally normal mental status examinations with normal memory and concentration abilities. (AR at 22-24; 582-83, 653-54, 824, 873, 891, 899, 984.)

In addition, Dr. Williams's focus on Claimant's abilities in work situations supports the ALJ's decision that Claimant could perform his past relevant work as an unloader/stocker, an unskilled job. (*Id.* at 25.) Dr. Williams found that Claimant would have limited ability to retain and recall auditory and verbal information, which would impact his ability to understand and follow instructions and procedures, but that Claimant would likely be able to follow instructions and learn tasks with hands-on training and supervision. (*Id.* at 1028.) These limitations seem in concert with unskilled work, which is "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 404.1568(a). Moreover, as discussed above, Claimant and his former employer both agreed that Claimant was able to perform

19

his past relevant work. (*Id.* at 216-18, 749.) Learning new skills would not be an issue in that job.

Finally, I note that the ALJ did not disregard Dr. Williams's opinion any more than he disregarded Dr. Brown's opinion. The ALJ also relied on Dr. Williams's testing at several places in the decision to state that Claimant had neurocognitive deficits. (*Id.* at 23-25.) This, alone, is evidence that the ALJ did not disregard the opinion. Far from finding Dr. Williams's opinion completely unsupported by any evidence in the record, which is what "disregard" implies, the ALJ found the opinion somewhat consistent with and supported by the evidence in the record. (*Id.* at 25.)

This factor does not weigh in favor of finding the opinion more persuasive.

### c.   Conclusion

Although one of the two most important factors weighs in favor of finding Dr. Brown's opinion more persuasive and one factor does not weigh in favor of finding his opinion more persuasive, the weight of the record as a whole is still paramount. I therefore recommend the District Court affirm the ALJ's decision on this issue. *See Moore*, 572 F.3d at 522 (holding that the court cannot reverse an ALJ's decision merely because substantial evidence would have supported an opposite decision). [4]

## B.   Whether the ALJ Fully and Fairly Developed the Record

Claimant asserts that although the record contains opinions from two examining psychologists and opinions from reviewing consulting psychologists and physicians, the record still needs further development. (Doc. 14 at 17-18.) Claimant argues that the

---

[4] I note that the other factors—(3) provider's relationship with the claimant, (4) specialization, and (5) other factors—do not weigh in favor of finding either Dr. Brown's or Dr. Williams's opinions more persuasive. While both are specialists who provided opinions in their field of expertise, neither one had a long-term relationship with Claimant and only examined him once at the request of the state agency. Claimant points to no "other factors" that would affect this conclusion. 20 C.F.R. §§ 404.1520c(c), 416.920c(c).

ALJ included none of the mental limitations suggested by the reviewing consulting psychologists or the examining psychologists in the RFC. (*Id.* at 17 (citation omitted).) Claimant asserts that "additional development was needed once the ALJ rejected these opinions before the ALJ could find Mr. Fenner merely had just a general 'unskilled work' limitation to account for his mental limitations." (Doc. 17 at 5.)

Claimant further argues that the ALJ should have developed the record "by obtaining some treating or examining source concerning [Claimant's physical] limitations." (Doc. 14 at 18 (citing *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000).) In short, Claimant asserts that remand is needed because the ALJ rejected all the available opinion evidence in the current record.

### 1. Legal Standard

A "social security hearing is a non-adversarial hearing, and the ALJ has a duty to fully develop the record." *Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006) (citing *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004)). The ALJ bears this responsibility "independent of the claimant's burden to press [his] case" and it extends to cases where claimants are represented by counsel at the administrative hearing. *Stormo*, 377 F.3d at 806. However, the Eighth Circuit has held:

> Ultimately, the claimant bears the burden of proving disability and providing medical evidence as to the existence and severity of an impairment. Past this point, "an ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision." *Naber v. Shalala*, 22 F.3d 186, 189 (8th Cir. 1994).

*Kamann v. Colvin*, 721 F.3d 945, 950 (8th Cir. 2013) (internal citations omitted). The inquiry is whether the claimant "was prejudiced or treated unfairly by how the ALJ did or did not develop the record." *Onstad v. Shalala*, 999 F.3d 1232, 1234 (8th Cir. 1993).

Absent unfairness or prejudice, remand is not required. *Id.* (citing *Phelan v. Bowen*, 846 F.2d 478, 481 (8th Cir.1988)).

In addition, the ALJ must determine a claimant's RFC "based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [his or her] limitations." *Myers v. Colvin*, 721 F.3d 521, 527 (8th Cir. 2013) (quoting *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000) (alterations in original)).

"Because [a] claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (citation omitted). "However, there is no requirement that an RFC finding be supported by a specific medical opinion." *Id.* (citing *Myers*, 721 F.3d at 526-27) (affirming RFC without medical opinion evidence); *Perks v. Astrue*, 687 F.3d 1086, 1092-93 (8th Cir. 2012) (same)). "In the absence of medical opinion evidence, 'medical records prepared by the most relevant treating physicians [can] provide affirmative medical evidence supporting the ALJ's residual functional capacity findings.'" *Hensley*, 829 F.3d at 932 (alteration in original) (quoting *Johnson v. Astrue*, 628 F.3d 991, 995 (8th Cir. 2011)).

Although Claimant bears the burden to "provid[e] the evidence [the ALJ] will use to make a finding about [Claimant's] residual functional capacity," the ALJ is "responsible for developing the claimant's complete medical history." 20 C.F.R. § 404.1545(a)(3) (2019). "The ALJ's obligation to develop the record 'is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.'" *Coleman v. Colvin*, No. 13cv1004 EJM, 2013 WL 4069523, at *2 (N.D. Iowa Aug. 12, 2013) (quoting *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001)). "The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record

as a whole." *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007) (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001)); *Martin v. Berryhill*, No. 1:18-CV-00004 JM/PSH, 2019 WL 138655, at *6 (E.D. Ark. Jan. 8, 2019) (explaining that "the ALJ must weigh the various medical opinions in the record") (citation omitted), *R. & R. adopted*, 2019 WL 334202 (E.D. Ark. Jan. 25, 2019). "No symptom or combination of symptoms can be the basis for a finding of disability, no matter how genuine the individual's complaints may appear to be, unless there are medical signs and laboratory findings demonstrating the existence of a medically determinable physical or mental impairment." SSR 96-4p.

### 2. Analysis

I find Claimant's reliance on *Nevland v. Apfel,* 204 F.3d 853, 858 (8th Cir. 2000) misplaced. Claimant cites *Nevland* for the proposition that a claimant's RFC must ordinarily be supported by a treating or examining source opinion to be supported by substantial evidence. (Doc. 14 at 18.) However, *Nevland* only requires remand when the record contains no medical evidence supporting the ALJ's decision and the ALJ relies solely on the opinion of a non-treating, non-examining reviewing consulting physician to craft the RFC, which is not the situation with the case at bar. 204 F.3d at 858. Here, the ALJ relied on medical evidence in the record including treatment notes and medical opinions to support his conclusions.

Claimant argues that "[c]oncerning mental limitations, the ALJ went his own route finding essentially none of the specific mental limitations suggested by the psychological consultants and the consultative examiners were worth including in an RFC." (*Id.* at 17 (citing *Lauer v. Apfel*, 245 F.3d 700, 706 (8th Cir. 2001) for the proposition that "[i]f the ALJ did not believe . . . that the professional opinions available to him were sufficient to allow him to form an opinion, he should have further developed the record to

determine, based on substantial evidence, the degree to which [Claimant's] mental impairments limited his ability to engage in work-related activities.").)

The ALJ did not "go his own route" regarding Claimant's mental limitations, instead, as the previous discussion demonstrates, the ALJ relied, in part, on the opinions of Drs. Brown and Williams. (AR at 22-25.) The ALJ also found the opinions of the reviewing consulting psychologists "generally consistent with and supported by the evidence of record." (*Id.* at 24.) Jennifer Ryan, Ph.D. and Lon Olson, Ph.D., found Claimant was not significantly limited in his ability to remember locations and work-like procedures or to remember very short simple instructions and that he was moderately limited in his ability to understand and remember detailed instructions. (*Id.* at 72-73, 88.) The reviewing consulting psychologists also determined that Claimant is able to follow simple 1-2 step instructions and perform simple, routine, repetitive work tasks. (*Id.* at 74, 90.) However, while it is clear the ALJ did not adopt every part of the reviewing consulting psychologists' opinions in formulating the RFC, the ALJ also noted that Claimant generally had normal neurological examinations, and normal memory, attention span, concentration, and fund of knowledge during examinations, in spite of acknowledged neurological deficits. (*Id.* at 24 (citations omitted).) The ALJ also relied on Claimant's largely normal and unremarkable examination findings. (*Id.* at 25.) The ALJ further relied on Claimant's statement that he generally understood the requirements of his previous job. (*Id.*) Contrary to the implications of Claimant's argument, the ALJ did not find any of the opinions from the psychologists in the record "not persuasive," instead finding they all had some amount of support in the record evidence. (*Id.* at 24-25.) Thus, in contrast to Claimant's assertion, the ALJ did not find that the medical opinions available to him were insufficient to allow him to form an opinion regarding Claimant's mental limitations. This distinguishes the instant case from *Lauer*. 245 F.3d at 706. *See Kamann,* 721 F.3d at 950 (ALJ permitted to issue decision without obtaining

additional evidence when evidence in record provides sufficient basis for decision) (citation omitted).

Claimant's entire argument related to development of the record on his physical impairments is that the ALJ should have developed the record "by obtaining some treating or examining source concerning [Claimant's physical] limitations." (Doc. 14 at 18.) This argument is woefully underdeveloped because it does not state what evidence the ALJ evaluated; how he evaluated it; and, most importantly, why that evidence was insufficient to provide a thorough evaluation of Claimant's physical impairments. Thus, this argument need not be addressed. *See Singer*, 897 F.3d at 980. Nevertheless, this argument can be dispatched relatively quickly and addressing the issue here will truncate discussion of other issues, below.

In support of his findings regarding Claimant's physical limitations, the ALJ stated that the record showed no evidence of significant epileptiform discharge, focal abnormalities, or intracranial abnormalities, in spite of Claimant's pseudoseizures. (AR at 24 (citing AR at 567, 792, 808, 828, 970, 972, 979, 1009-10).) The ALJ also found that Claimant's physical examinations were normal and his neurological examinations were generally normal. (*Id.* (citing AR at 582-86, 676, 784, 889, 893, 927, 929, 961, 963, 1007).) Thus, the ALJ relied on treatment notes to support his decision. (*Id.* at 20-24 (in-depth discussion of Claimant's treatment history).) The ALJ also relied on the opinions of the reviewing consulting physicians, who found Claimant would have no exertional limitations and the following postural limitations: Claimant should never climb ladders, ropes, or scaffolds; should avoid concentrated exposure to noise, fumes, odors, dusts, gases, etc.; and should avoid even moderate exposure to hazards such as machinery and heights. (*Id.* at 69-72, 85-87.) The ALJ found these opinions "generally consistent with and supported by the evidence of record." (*Id.* at 24.) In fact, these limitations were largely incorporated into the RFC. (*Id.* at 16.) Thus, the ALJ's decision regarding

25

Claimant's physical RFC was also supported by evidence in the record as a whole. Claimant cites no evidence that was missing and I find that the ALJ's thorough discussion of the evidence and heavy citation to the record supports his decision. Claimant appears to confuse "no opinion from a treating medical source" with "no medical evidence" in the record; they are not the same thing. *See Barrows v. Colvin*, No. C13-4087-MWB, 2015 WL 1510159, at *9 (N.D. Iowa Mar. 31, 2015) (holding that "no medical evidence" is a circumstance that requires remand, but is not the same circumstance as no medical evidence from a treating source). The court should still affirm an ALJ's decision when it rests on medical evidence sufficiently supportive of the ALJ's findings, even without a treating source opinion. *Id.*; *Hensley*, 829 F.3d at 932.

Here, substantial medical evidence supported the ALJ's decision. The record is over 1,000 pages and the ALJ ordered two consulting examinations. In addition, the record contains the opinions of two reviewing consulting psychologists and two reviewing consulting physicians. I find that this record was not ambiguous or inadequate. Claimant has not proffered any cogent argument that either of these conditions precedent to further development of the record was present in this case. *See Coleman*, 2013 WL 4069523, at *2. I further find that Claimant was not prejudiced by the development of the record. *See Onstad*, 999 F.3d at 1234. Claimant did not raise the issue of prejudice at the hearing in spite of raising a pre-hearing objection to the way that VEs calculate job numbers. (AR at 27, 55.) Moreover, in spite of the Claimant's attorney stating that the record was complete at the beginning of the hearing, the ALJ noted the possibility of missing medical records and kept the record open for thirty days after the hearing. (*Id.* at 37, 59-62.) Claimant does not indicate what type of opinion related to his physical impairments he asserts is missing from the record. Claimant has treating physicians and was free to submit opinions in support of his claim prior to the hearing. That Claimant did not do

so and now apparently seeks a second opportunity to enhance the record is not a reason for remand.

I recommend affirming the ALJ's decision on this issue.

## C.    *Whether the ALJ Properly Evaluated Claimant's Subjective Complaints*

### 1.    *Legal Standard*

When a claimant suffers from a severe impairment, but the impairment does not meet or equal a disabling impairment listed in the regulations, the ALJ "will consider the impact of [the claimant's] impairment(s) and any related symptoms, including pain, on [the claimant's] residual functional capacity." 20 C.F.R. § 404.1529(d)(4). This determination involves a two-step process in which the ALJ first decides whether the claimant has a medically determinable impairment that could reasonably be expected to produce the claimant's symptoms and then evaluates the intensity and persistence of the claimant's symptoms. *Id.* § 404.1529(b),(c). When evaluating the claimant's subjective complaints during the second step, the ALJ considers the objective medical evidence, the claimant's work history, and evidence relating to the following factors ("the *Polaski* factors"): (1) the claimant's daily activities; (2) the duration, frequency and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; and (5) [the claimant's] functional restrictions. *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984); 20 C.F.R. § 404.1529(c)(3).[5]  An ALJ is not required to methodically discuss each *Polaski* factor as long as the ALJ "acknowledge[es] and examin[es] those considerations before discounting [a claimant's] subjective

---

[5] The Code of Federal Regulations includes the additional factors of: (1) other treatment the claimant receives for pain relief; and (2) measures the claimant uses to relieve pain "(e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.)." 20 C.F.R. § 404.1529(c)(3)(v),(vi).

27

complaints." *Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) (citing *Brown v. Chater*, 87 F.3d 963, 966 (8th Cir. 1996)).

After considering the factors and evidence, the ALJ determines the extent to which the claimant's symptoms affect the claimant's capacity to perform basic work activities. *Id.* § 404.1529(c)(4). The claimant's "symptoms, including pain, will be determined to diminish [the claimant's] capacity for basic work activities to the extent that [the claimant's] alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence and other evidence." *Id.* "'The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts.'" *Wagner*, 499 F.3d at 851 (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001)).

### 2.    *Claimant's Arguments*

Claimant argues that the ALJ relied only on objective medical evidence when determining Claimant was not disabled, which means the ALJ's decision was at odds with the requirements of *Polaski*. (Doc. 14 at 10.) Claimant asserts that he "clearly endorsed limitations that were more limiting than the ALJ's RFC determination, and limitations that generally would preclude the performance of his past relevant work and other work that exists in significant numbers in the national economy, which the ALJ recognized." (*Id.* at 13.) Claimant argues that the ALJ's error was not harmless and the case must be remanded for a proper credibility evaluation. (*Id.* at 11-13 (citing *Lucus v. Saul*, 960 F.3d 1066, 1069-70 (8th Cir. 2020), for the proposition that there is "no harmless error when the physician's opinions, if adopted, would have had vocational expert testimony showing the claimant was not employable" and gathering cases where court did not evaluate ALJ decisions for harmless error, even when there was a *Polaski* error).)

### 3.    *Analysis*

In *Davis v. Berryhill*, this Court affirmed the credibility finding of an ALJ, who, like the ALJ in the instant case, did not mention *Polaski* or the *Polaski* factors in her decision. No. 17-CV-80-LRR, 2018 WL 3600056, at *5 (N.D. Iowa July 27, 2018), *R. &. R. adopted sub nom. Davis v. Comm'r of Soc. Sec.*, 2018 WL 4300505 (N.D. Iowa Sept. 10, 2018), *aff'd sub nom. Davis v. Saul*, 963 F.3d 790 (8th Cir. 2020).

> Here, the ALJ referenced claimant's daily activities; the location, duration, frequency, and intensity of claimant's pain; factors that precipitate and aggravate the symptoms; effectiveness of medication or other treatment modalities; and any other factors that concern claimant's functional limitations. (AR 113); *accord Polaski*, 739 F.2d. at 1322. Although the ALJ did not specifically cite to the *Polaski* case, she nevertheless discussed the required relevant factors. Nothing more is needed. *See Myers v. Colvin*, 721 F.3d 521, 527 (8th Cir. 2013) (holding the ALJ "was not required to discuss each factor's weight in the credibility calculus"). "If the ALJ gives good reasons for discrediting some testimony, the court is bound by that finding unless it is not supported by substantial evidence on the record as a whole." *Wheeler*, 2018 WL 2266514, at *7 (citing *Robinson v. Sullivan*, 956 F.2d 836, 841 (8th Cir. 1992) ). This Court, in *Wheeler*, pointed to several instances where the ALJ identified inconsistencies between claimant's complaints and the medical evidence of record as sufficient "good reasons" for the ALJ to discredit claimant's testimony. (*Id.*).

> In her decision, the ALJ pointed to objective medical evidence in the medical record that eroded claimant's subjective allegations. (AR 114). . . . Further, the ALJ highlighted that although claimant had a consistently low or agitated mood, claimant's general mental status was unremarkable throughout the medical record, and that treatment notes indicated that claimant's depression was largely situational. (*Id.*).

> Further, the ALJ found it significant that the claimant's own statements and actions were inconsistent with claimant's subjective allegations. (AR 113-14).

. . .

29

Claimant argues that a person does not have to be bedridden to be found disabled. (Doc. 14, at 11) (citing *Reed v. Barnhart*, 399 F.3d 917, 924 (8th Cir. 2005)). The Eighth Circuit, however, more recently held that "acts such as cooking, vacuuming, washing dishes, doing laundry, shopping, driving, and walking, are inconsistent with subjective complaints of disabling pain." *Medhaug v. Astrue*, 578 F.3d 805, 817 (8th Cir. 2009) (citation omitted). . . . When an ALJ explicitly discredits a claimant's testimony and gives good reasons for doing so, a court should normally defer to the ALJ's credibility determination because the ALJ has had the opportunity to observe the claimant firsthand. *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003). I find that the ALJ has given good reasons for discounting claimant's subjective allegations, and thus, I accept the ALJ's credibility determination.

While claimant correctly states that the ALJ gave little weight to claimant's close friend, Ms. Wendy Bruns' statement, claimant erroneously argues that the ALJ's rejection of Ms. Bruns' report was a reason the ALJ denied the claim.

.   .   .

Contrary to claimant's argument, the ALJ did consider the record as a whole in deciding to discount claimant's subjective allegations. I find that although claimant presented testimony and evidence of disabling limitations, the ALJ's decision was supported by substantial evidence on the record as a whole.

*Id.* at *5-6; *see also Wheeler v. Berryhill*, No. 17-CV-4038-LTS, 2018 WL 3091624, at *7-8 (N.D. Iowa Jan. 11, 2018) (recommending affirming ALJ's credibility decision in spite of failure to mention *Polaski*), *R. & R. adopted*, 2018 WL 2266514 (N.D. Iowa May 17, 2018).

First, I note that although the ALJ did not mention *Polaski*, he did acknowledge that objective medical evidence, alone, would not support his decision and listed factors, which, in large part mirrored several of the *Polaski* factors, that he had to, and did, evaluate while crafting Claimant's RFC:

[O]nce an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms

has been shown, the undersigned must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functional limitations. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must consider other evidence in the record to determine if the claimant's symptoms limit the ability to do work-related activities.

(AR at 19.)

Second, this case is analogous to *Davis*. Although the ALJ did not mention *Polaski* or the specific *Polaski* factors, as discussed above in parts III.A. and III.B, *supra*, the ALJ discussed and analyzed the objective medical evidence and Claimant's work history. The ALJ noted that Claimant, himself, stated that he understood the requirements of his unloader/stalker job and got along with his coworkers and customers. (AR at 24, 749.) Claimant said he could keep pace at work. (*Id.* at 749.)

The ALJ also discussed the duration, frequency and intensity of Claimant's symptoms and noted that when Claimant reported seizure-like activity in March 2019, he also reported that his most-recent seizure while awake was six months prior to that. (*Id.* at 22 (citing AR 1004-05).) The ALJ also stated that just prior to Claimant's alleged onset of disability date, Claimant reported that medication controlled his headaches and that he had not experienced any seizure-like activity for several months. (*Id.* at 20 (citing AR 405).) The ALJ also repeatedly relayed that when Claimant sought medical attention for pseudoseizure activity, Claimant had grossly normal mental status and neurological examinations shortly after the seizures. (*Id.* at 21-22.) In addition, the ALJ noted that Claimant's mental health treatment was "conservative and minimal" and that "[d]espite the claimant's alleged onset date, the evidence of record does not indicate a significant worsening of his mental health symptoms or increase in mental health treatment." (*Id.*

at 22, 23.)  A conservative course of treatment can weigh against a claim of disabling impairment. *Milam v. Colvin*, 794 F.3d 978, 985 (8th Cir. 2015).

In fact, the pages the ALJ cites to support his finding that Claimant's mental health did not worsen after his alleged onset of disability and that Claimant did not seek mental health treatment, are all treatment notes related to other health concerns. (*Id.* at 22 (citing AR at 584, 653, 716, 719, 899).)  The ALJ also stated that in spite of Claimant's primary care physician documenting that Claimant had a normal mood and affect and intact insight, and judgment in May 2018, the physician started Claimant on psychiatric medication. (*Id.* at 23 (citing AR at 936).)

The ALJ also acknowledged Claimant's functional restrictions, noting that Claimant claimed his headaches were associated with light sensitivity, photophobia, and phonophobia; that he has difficulties understanding, remembering, and finishing tasks; that he does not like being in big groups; and that he has difficulties with daily living tasks. (*Id.* at 19-20.)  The ALJ addressed the limitations that were supported by the record and incorporated them into the RFC by limiting Claimant to unskilled work where he can never climb ladders, ropes, or scaffolds and has no exposure to the sorts of hazards presented by unprotected heights, elevations, or dangerous or unguarded moving machinery or parts. (*Id.* at 19.)  The ALJ also limited Claimant to no exposure to loud noise. (*Id.*)

Finally, contrary to Claimant's argument, the ALJ clearly addressed Claimant's daily activities: "[T]he above residual functional capacity assessment is supported by the objective medical evidence since the alleged onset date, as previously described, and the level and types of activities performed per the claimant." (*Id.* at 25.)  As previously discussed, Claimant told Dr. Brown that although he does not cook complex meals for fear of starting a fire, he cooks in the microwave. (*Id.* at 749.)  He also reported no difficulties with his personal hygiene or taking care of his home, including doing laundry.

(*Id.*) Claimant has a driver's license, but his wife does not let him drive due to his pseudo-seizures. (*Id.*) Claimant reported difficulty counting and budgeting money. (*Id.*) Claimant reported similar, although less detailed, information to Dr. Williams. (*Id.* at 1024.) Claimant told Dr. Williams that his physician told him not to drive. (*Id.*) The ALJ noted that in his function report, Claimant indicated he had difficulties with personal care, preparing more than simple meals, household chores, and yardwork. (*Id.* at 20 (citing AR at 227-35).) The ALJ also acknowledged the third-party function report of Claimant's wife Ashley Fenner who stated she was concerned Claimant would hurt himself or others if he blacked out, that Claimant struggles to follow to directions, handle stress, or changes in routine, and to pay attention for extended periods of time. (*Id.* at 20 (citing AR at 237-44).) Ms. Fenner also stated that Claimant has difficulty with activities of daily living such as personal care, preparing more than simple meals, household chores, and driving. (*Id.*) Therefore, the ALJ acknowledged Claimant's alleged impairments and, as discussed above, incorporated the ones that were supported by the record as a whole into the RFC. (*Id.* at 22 ("[T]he undersigned has included significant postural and environmental limitations in the above residual functional capacity to account for the claimant's history of pseudoseizures and history of reported headaches."); 25 ("[T]he above residual functional capacity has incorporated significant limitations in accounting for all symptoms related to the claimant's severe impairments. However, additional restrictions are not supported by the longitudinal record as a whole.").)

Third, just as the ALJ in *Davis* found that the claimant erroneously argued that the ALJ's rejection of Ms. Bruns' report was the reason the ALJ denied the claim, 2018 WL 3600056 at *6, Claimant here erroneously argues that the ALJ relied exclusively on the objective medical evidence to support his decision. The previous discussion shows that the ALJ's decision encompassed *Polaski* factors other than objective medical evidence.

Finally, *Lucus v. Saul* can be distinguished from the case at bar because the ALJ in that case failed to provide good reasons for giving a treating physician's opinion partial weight, which was not a harmless error because if the physician's opinion had been adopted, the RFC and hypotheticals might have changed. 960 F.3d 1066, 1069-70 (8th Cir. 2020). Here, the ALJ provided good reasons for his evaluation of Claimant's subjective complaints and, as the previous discussion shows, included limitations in the RFC that addressed those limitations. Claimant cites no particular *Polaski* factor the ALJ failed to properly address or limitations that Claimant "clearly endorsed . . . that were more limiting than the ALJ's RFC determination, and . . . that generally would preclude the performance of his past relevant work and other work that exists in significant numbers in the national economy." (Doc. 14 at 13.)

Accordingly, I find that although the ALJ did not mention *Polaski*, he conducted a proper analysis of Claimant's subjective complaints and discussed the *Polaski* factors. "Nothing more is needed." *Myers*, 721 F.3d at 527. I further find that the ALJ's decision is supported by substantial evidence in the record as a whole. *See Dunahoo v. Apfel*, 241 F.3d 1033, 1038 (8th Cir. 2001) (court will defer to ALJ's credibility decision if ALJ provides good reasons for decision, even if every *Polaski* factor is not discussed in depth) (citing *Brown v. Chater,* 87 F.3d 963, 966 (8th Cir. 1996)). Therefore, I recommend the District Court affirm the ALJ's decision on this issue.

**D.** ***Whether the ALJ Presented a Deficient Hypothetical to the Vocational Expert***

**1.** ***Relevant Facts and Legal Standards***

At the hearing, the ALJ presented the following hypothetical to the VE, which, in large part, became the RFC:

> All right then, ma'am, for my first hypothetical I'd like you to assume that we have a hypothetical individual of the Claimant's age, education, and work experience, is able on a sustained basis to engage in work with no exertional limits however our hypothetical individual should have a position

where they need never climb ladders, ropes, or scaffolds. As well we want our hypothetical individual to have a position where they need have no more than occasional exposure to respiratory or pulmonary irritants such as fumes, odors, dust, and gases. As well, we want our hypothetical individual to have a position where they need have no exposure to the sorts of hazards presented by unprotected heights or elevations or dangerous or unguarded moving machinery or parts. And as well a position where they can have no exposure to loud noise and by loud noise I'm piggybacking on the definition of loud noise in the SOC. So for instance loud can manufacturing plant or along heavy earth- moving equipment, that sort of thing would be sort [sic] of noise level that would be an inappropriate job location for the individual I contemplate in hypothetical 1. If we had an individual then with that constellation of abilities and limitations as we look at the past work summary that you prepared, do you feel that the position that we see reflected there would be an appropriate fit for the individual that I've described in hypothetical 1?

(AR at 55-56.)

The VE testified that under this hypothetical, "the job as an unloader, stocker would be possible." (*Id.* at 56.) The VE also testified that there were other jobs in the national economy available to the person described in this hypothetical. (*Id.*) She identified laundry worker, *DOT* 361.684-010 and packager, *DOT* 920.587-018. (*Id.*) Both are medium jobs with specific vocational preparation ("SVP") level 2. (*Id.*)

As discussed above, the ALJ first found that Claimant could perform his past relevant work at step four, both as actually and generally performed. (*Id.* at 25-26.) He then went on to provide an alternative step five finding that Claimant could perform the jobs of laundry worker and packager. (*Id.*) The ALJ stated the following:

> The undersigned notes the residual functional capacity posed to the vocational expert at the hearing did not include a limitation to unskilled work. Generally, vocational evidence is required when making a decision at step five of the sequential evaluation process where the claimant has a severe mental impairment (AR 14-1(8)). However, the undersigned finds the additional limitation limiting the claimant to unskilled work continues

35

to be consistent with the vocational expert response as the representative occupations provided by the vocational expert are unskilled positions.

(*Id.* at 27.)  Again, the RFC in this case provided the following limitations:

[T]he claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: never climb ladders, ropes, or scaffolds; no more than occasional exposure to respiratory or pulmonary irritants such as fumes, odors, dusts, and gases; no exposure to the sorts of hazards presented by unprotected heights, elevations, or dangerous or unguarded moving machinery or parts; no exposure to loud noise, for instance, a loud can manufacturing plant or along heavy earth moving equipment would be inappropriate; *and is limited to unskilled work*.

(*Id.* at 18-19 (emphasis added).)

AR 14-1(8), which the ALJ cites, requires VE evidence at step five to determine whether a claimant with a severe mental impairment can perform jobs that exist in significant numbers in the national economy.  SSA Acquiescence Ruling ("AR") 14-1(8), 2014 WL 2112788.[6]  AR 14-1(8) applied the holding of *Brock v. Astrue*, 674 F.3d 1062 (8th Cir. 2012).  *Brock* held that because the ALJ determined that the claimant suffered from severe mental impairments, the ALJ should have consulted a VE to determine whether the claimant had the RFC at step five to perform other jobs that existed in significant numbers in the national economy.  674 F.3d at 1066.

## 2.    *Claimant's Arguments*

Claimant argues that the ALJ presented a deficient hypothetical question to the vocational expert because the ALJ failed to account for his understanding, remembering, and applying information limitations.  (Doc. 14 at 5.)  Specifically, Claimant asserts that the hypothetical should have included the moderate limitations the ALJ found he had in understanding, remembering, and applying informing at step three of the five step

------

[6] AR 14-1(8) only applies in the Eighth Circuit.

process.  (AR at 17-18.)  Claimant asserts that this failure warrants remand of his claim because VE testimony in response to a deficient hypothetical question does not constitute substantial evidence.  (*Id.* (citing *Newton v. Chater*, 92 F.3d 688, 695 (8th Cir. 1996).)[7]

Claimant asserts that his case "fits the *Newton v. Chater* mold," without explaining what that "mold" is.  (*Id.* at 6.)  Claimant continues that the ALJ's assignment of moderate limitations in

> more specific tasks during the step three analysis . . . are not accounted for, or are not clearly accounted for, by an "unskilled work" limitation included in a hypothetical question to a vocational expert, and one cannot assume a vocational expert would understand an "unskilled work" limitation to include a limitation involving "following one- or two-step oral instructions

---

[7] Claimant cites several cases that address the concentration, persistence, and pace ("CPP") factor that is also analyzed at step three of the five-step process.  (Doc. 14 at 5-6.)  Claimant states, "The Northern District of Iowa has addressed the 'moderate CPP limitations' issue in several cases, generally involving residual functional capacity limitations more limiting than "unskilled work"-type of limitations." (*Id.* at 5.)  I have reviewed the cases Claimant cites, *Scott v. Berryhill*, 855 F.3d 853, 857 (8th Cir. 2017); *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010); *Doyle v. Saul*, No. C18-3040-LTS, 2019 WL 3978409 (N.D. Iowa Aug. 22, 2019); and *Hosch v. Colvin*, No. C15-2014-CJW, 2016 WL 1261229 (N.D. Iowa Mar. 30, 2016). Substantively, they are irrelevant to the case at bar because, as expected, they address CPP limitations.  At issue here are understanding, remembering, and applying information limitations.  Claimant makes no connection between CPP limitations and understanding, remembering, and applying information limitations.  Moreover, *Hosch* properly dismissed Claimant's argument that the ALJ should have adopted his paragraph B limitations into the RFC "simply because he found plaintiff had these limitations." 2016 WL 1261229, at *5.

> The RFC analysis is different from the Step Three analysis. Social Security regulations and rulings describe the distinction between the ratings of limitations in the four mental functional categories (daily living, social functioning, concentration, persistence or pace, and decompensation) and the limitations in an RFC determination. 20 C.F.R. § 416.920a(d)(1),(2),(3); Social Security Ruling ("SSR") 96-8p. The degree of limitation in the four categories determines whether a claimant has a severe mental impairment and whether such impairment meets or equals a listing. 20 C.F.R. § 416.920a(d)(1),(2); SSR 96-8p.

*Id.*  I also note that is doubtful that Claimant meant to argue about CPP limitations in this case because at step three, the ALJ found Claimant's ability to concentrate, persist, or maintain pace only mildly limited.  (AR at 18.)

> to carry out a task" or other limitations the ALJ discussed at step three in
> the understanding, remembering, or applying information section of the
> analysis.

(*Id.*)

Claimant also reiterates that reviewing consulting psychologists Jennifer Ryan, Ph.D. and Lon Olson, Ph.D., concluded that Claimant could follow "simple 1-2 step instructions and perform simple repetitive work tasks." (*Id.* at 7.) Claimant argues that, considering the ALJ's step three analysis concerning Claimant's moderate difficulties with understanding, remembering, or applying information, his failure to explain why he "rounded" the state agency reviewing consulting psychologists' opinions to just "unskilled work" instead of following the opinions, Claimant's "*Gann* error is blatant." (*Id.* (citing *Gann v. Berryhill*, 864 F.3d 947, 952-53 (8th Cir. 2017).) Claimant avers that the ALJ "credited" these opinions and that they were "much more limiting than "unskilled work." (*Id.* at 9.) As with the "*Newton* mold," Claimant does not explain what "a *Gann* error" is, let alone a blatant error.

Claimant also asserts that the ALJ erred at step four because he was unable to perform his past relevant work as actually performed. (*Id.* (citing AR at 19); Doc. 17 at 2 (citing AR at 222.) He also argues that substantial evidence does not support that he would otherwise have the ability to perform his past relevant work as actually performed if his moderate difficulties with understanding, remembering, or applying information are properly incorporated into his RFC. (*Id.*)

Finally, Claimant asserts that the ALJ erred by not presenting a hypothetical question to the ALJ that included all the limitations caused by his mental impairments. (*Id.* at 7-8.) Claimant argues that inclusion of the "unskilled work" limitation required a supplemental hearing or at least additional VE interrogatories. (*Id.* at 8 (citing *Brock*, 674 F.3d at 1065-66); AR 14-1(8) ("Before we deny a claim for disability benefits at step

five (or the last step in the sequential evaluation process in continuing disability review claims) when a claimant has a severe mental impairment(s), we will produce VE evidence in claims at the hearing level.").)

### 3. Analysis

#### a. Claimant's General Arguments Related to the RFC and Hypothetical

First, as noted in footnote 7, *supra*, the ALJ was not required to include the moderate limitations in understanding, remembering, and applying information in to the RFC simply because he found Claimant had these limitations at step three because the different steps of the five-step process serve different purposes. *See Hosch*, 2016 WL 1261229, at *5; *Chrismarich v. Berryhill*, 888 F.3d 978, 980 (8th Cir. 2018) (explaining that different steps of the five-step process serve different purposes).

Second, much of Claimant's argument is again based on an assumption that the ALJ wholly adopted the opinions of the reviewing consulting psychologists who concluded Claimant "is able to follow simple 1-2 step instructions and perform simple, routine, repetitive work tasks." (AR at 74, 90.) However, there is no indication that the ALJ did so. While the ALJ found the reviewing consulting psychologists' opinions "generally consistent with and supported by the evidence of record" (*Id.* at 24), the ALJ did not find the opinions "entirely persuasive" or something similar that indicated he intended to adopt every part of the opinions or assign them a persuasive rating akin to the old controlling weight rating. *See Bantz v. Berryhill*, No. 17-CV-00002-LRR, 2018 WL 3078111, at *6 (N.D. Iowa Feb. 22, 2018) (ALJ not required to adopt all limitations in an opinion which was not assigned controlling weight), *R. & R. adopted,* 2018 WL 1522693 (N.D. Iowa Mar. 28, 2018). An ALJ is entitled to choose those parts of a medical source's opinion that are supported by the record, and thus will be adopted, and those that will not be adopted. *See Pirtle v. Astrue*, 479 F.3d 931, 934 (8th Cir. 2007)

(finding that the ALJ properly relied on portion of opinion that was supported by substantial evidence and properly disregarded rest of opinion). Thus, the ALJ's decision to not include the 1-2 step limitation in the RFC was supported by the record as a whole because the ALJ did not indicate that the reviewing consulting opinions were so persuasive that he intended to adopt all of the limitations contained therein.

Third, this case can be distinguished from *Newton*, 92 F.3d 688. In *Newton*, the ALJ proffered a hypothetical question to the VE that described a person with limitations that included, among other things "a capacity for simple jobs." 92 F.3d at 694. The claimant argued that the hypothetical question was insufficient "because it omitted medical evidence of his deficiencies of concentration, persistence, or pace resulting in a failure to complete tasks in a timely manner." *Id.* A consulting examining psychiatrist concluded the claimant was incapable of competitive employment. *Id.* at 690. The reviewing medical consultants had found the claimant had moderate and marked limitations in his abilities to carry out instructions, maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, complete a normal work week, and perform at a consistent pace without an unreasonable number and length of rest periods. *Id.* at 690, 695. However, they concluded the claimant could complete "independent simple activities." *Id.* at 690. The ALJ "stated on the Psychiatric Review Technique Form attached to the decision that [the claimant] 'often' ha[d] deficiencies of concentration, persistence, or pace." *Id.* at 695.

*Newton* held that the ALJ erred by not including the deficiencies in the hypothetical because there was "no dispute in the medical evidence" that the claimant suffered from deficiencies in concentration, persistence, and pace that were not included in the hypothetical question presented to the VE. *Id.* Because the VE's testimony was not based on "the full extent of [the claimant's] limitations[,] . . . his testimony could not

have constituted substantial evidence to support the Commissioner's decision." *Id.* The court relied, in part, on the VE's testimony that a "moderate deficiency in these areas . . . would cause problems on an ongoing daily basis, 'regardless of . . .what the job required from a physical or skill standpoint.'" *Id.* (second set of ellipses in original).

Although Claimant does not point to any specific evidence to support his argument, based on his pinpoint citation to *Newton*, I note that at the hearing in the case at bar, Claimant's attorney engaged in the following exchange with the VE:

> Atty: If the person were limited to no more than simple, routine, repetitive work in hypothetical 1, these are all SVP 2 jobs so I assume he could still do those but if he could work at – not work at a regular pace so he would be off-task for 15% or more of the workday or workweek, would he be able to do the work you described in hypothetical 1?
>
> VE: No.
>
> Atty: Okay. And if the person were to have issue with interacting with both the public and coworkers and supervisors, so that contact would be less than occasional, could he do any of the work that you did – you described in hypothetical 1?
>
> VE: You said – can you repeat the first –
>
> Atty: Less.
>
> VE: Part of that?
>
> Atty: Yes. Less than occasional interaction with coworkers, the public, and supervisors.
>
> VE: No, those jobs would not be possible.

(AR at 58.) Claimant's attorney based his question related to less than occasional contact with the public, coworkers, and supervisors on Claimant's termination, which sounded to Claimant's attorney "not on the level that would reflect that it would be somebody who could get along with supervisors on a regular basis, supervisors and coworkers." (*Id.* at 58-59.) Claimant's attorney admitted that Claimant did not have much mental health treatment upon which to base a hypothetical. (*Id.* at 59.)

Therefore, like the VE in *Newton*, the VE in the instant case also provided some testimony related to the paragraph B factors. However, unlike the court in *Newton*, I

found that the RFC was supported by the record as a whole. *See* part III.B, *supra*; *Guilliams*, 393 F.3d at 801. ("[E]ven if inconsistent conclusions could be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence in the record as a whole.") Claimant's attorneys typically proffer hypotheticals to VEs that elicit testimony favorable to the Claimant. However, when that testimony is not based on the record as a whole, the ALJ is free to disregard the testimony in crafting the RFC. Therefore, I find this case does not fit "the *Newton v. Chater* mold."

Finally, Claimant's reliance on *Gann,* 864 F.3d 947 is also misplaced. In *Gann*, the VE's testimony did not support the ALJ's step five finding because although the ALJ assigned significant weight to the opinions of the state agency consultants, the ALJ did not include the consultants' adaptive limitations in the hypothetical presented to the VE. 864 F.3d at 953-54. Claimant asserts that the ALJ's *Gann* error is blatant because the ALJ failed to explain why he "rounded" the state agency consulting reviewing psychologists' opinions to just "unskilled work" instead of following their opinions. (Doc. 14 at 7.) Claimant apparently asserts that because the ALJ "credited" these opinions, which he asserts are "much more limiting than "unskilled work," the ALJ was required to adopt all the limitations contained in the opinions. (*Id.* at 9.)

As discussed above, an "ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions [of] any of the claimant's physicians." *Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011) (quoting *Schmidt v. Astrue,* 496 F.3d 833, 845 (7th Cir. 2007) (brackets in original)). Moreover, as also discussed above, there is no indication that the ALJ intended to adopt every part of the reviewing consultant psychologists' opinions or that he intended to make the opinions the controlling opinions in the record. *See Pirtle*, 479 F.3d at 934 (ALJ entitled to choose what parts of an opinion he adopts); *Bantz*, 2018 WL 3078111, at *6 (ALJ not required

to adopt all limitations in opinion not assigned controlling weight). Thus, this argument is without merit.

### b. Claimant's Step 4 Argument Regarding Work as Actually Performed

Claimant argues the ALJ erred in finding at step four that he was able to perform his past relevant work as actually performed. Claimant asserts that his job required him to use machines, tools, and equipment, which is prohibited by the RFC. (Doc. 17 at 2 (citing AR at 222).) Claimant also argues that his past relevant work involved unloading trucks and stacking shelves "at various elevations," which is also prohibited by the RFC. (*Id.* (citing AR at 22).)

In relevant part, the RFC provides that Claimant can "never climb ladders, ropes, or scaffolds; . . . [and can] have no exposure to the sorts of hazards presented by unprotected heights, elevations, or dangerous or unguarded moving machinery or parts. . . ." (AR at 19.)

When evaluating whether a claimant can return to past work, the ALJ

> must specifically set forth the claimant's limitations, both physical and mental, and determine how those limitations affect the claimant's residual functional capacity. The ALJ must also make explicit findings regarding the actual physical and mental demands of the claimant's past work. Then, the ALJ should compare the claimant's residual functional capacity with the actual demands of the past work to determine whether the claimant is capable of performing the relevant tasks. A conclusory determination that a claimant can perform past work without these findings, does not constitute substantial evidence that the claimant is able to return to his past work.

*Groeper [v. Sullivan]*, 932 F.2d [1234,] 1238–39 [8th Cir. 1991] (citations omitted).

*Ingram v. Chater*, 107 F.3d 598, 604 (8th Cir. 1997).

The Commissioner argues that Claimant has "provided no citation to evidence showing that his past relevant work as *actually* performed required climbing or use of machinery to extent [sic] that it the ALJ's RFC precluded it." (Doc. 16 at 25 (emphasis in original).) The Commissioner asserts the following:

> [Claimant] has not shown that his unloader/stocker job required climbing to any extent, much less climbing of ladders, ropes, or scaffolds, which was the only type of climbing precluded by the RFC. Further, the ALJ's RFC restricted exposure to "dangerous or unguarded moving machinery or parts" not "working with machines, tools, or equipment," which are two different things that do not necessarily encompass one another as plaintiff appears to believe (Tr. 19).

(*Id.*)

I respectfully disagree with the Commissioner. Claimant cites AR 222, Claimant's Disability Report. In that report, Claimant stated that his job as an unloader/stocker at Walmart required him to climb eight hours a day. (AR 222.) Claimant also stated that he used "machines, tools, or equipment" in this job (*Id.*) Claimant clearly stated that he climbed eight hours a day. While I suspect it may be safe to assume Claimant did not climb ropes in this job, it is certainly not safe to assume he did not climb ladders or scaffolds in the loading area of a major retail store. Moreover, there is simply no evidence in the record regarding what types of machinery, tools, and equipment Claimant worked with in this job. Thus, the Commissioner merely speculates that Claimant did not work with dangerous or unguarded moving machinery or parts.

While Claimant retained the burden to prove disability at step four, Claimant's Disability Report put the ALJ on notice that he had the responsibility to ensure the record was sufficiently developed so that he could fulfill his obligations under *Ingram*. The hearing in this case was somewhat unique because the ALJ did most of the questioning

44

of Claimant. (AR at 40-54.) The ALJ did not ask about Claimant's specific job duties. When the ALJ rendered his step four decision, the ALJ stated the following:

> The claimant is capable of performing past relevant work as an unloader/stocker. This work does not require the performance of work-related activities precluded by claimant's residual functional capacity (20 CFR 404.1565).
>
> The claimant has past work as an unloader/stocker (DOT code 922.687-058, unskilled). The vocational expert indicated the claimant actually performed the position at a very heavy exertional level, while the *Dictionary of Occupational Titles* indicates the job is generally performed at a medium exertional level (Exhibit 20E).
>
> .  .  .
>
> In comparing the claimant's residual functional capacity with the physical and mental demands of this work, the undersigned finds that the claimant is able to perform it as actually and generally performed. At the hearing, the vocational expert testified the claimant would be able to perform his past relevant work. Following the hearing, the undersigned included an additional limitation in the above residual functional capacity, limiting the claimant to unskilled work. The claimant's past relevant work is unskilled. Accordingly, the undersigned finds the claimant is capable of performing his past relevant work.

(*Id.* at 25-26.)

Although this sounds like the ALJ conducted a thorough analysis, he did not. The RFC in this case contains almost all physical limitations. However, there is no evidence in the record as to how Claimant's past relevant work would be impacted by those limitations. The VE testified based on limited information, i.e., she did not know the requirements of Claimant's past relevant work as actually performed. The ALJ made this determination without making the proper findings, which means the determination does not constitute substantial evidence that Claimant can return to his past work. *Ingram*, 107 F.3d at 604 (quotation omitted). Therefore, I find that remand is necessary

for further development of this issue, either via interrogatories to the Claimant or via a hearing on the issue.

### c. *Claimant's Arguments Regarding Work as Generally Performed and Step 5*

Claimant argues that the ALJ "should have known he could not throw on an 'unskilled work' limitation at the end of the RFC and call it a day given the Acquiescence Ruling he cited clearly explained he was attempting the equivalent of what was attempted in *Brock v. Astrue*." (Doc. 17 at 3.) Claimant asserts that the ALJ could not assume that the impact of "an unskilled work" limitation would not have impacted the jobs identified by the vocational expert because the ALJ cannot assume the impact of a mental limitation on a claimant's ability to perform work in the national economy. (*Id.*) Claimant further argues that the ALJ's actions "cast a great degree of doubt on the RFC mental limitations and how they were crafted compared to a more usual case where the ALJ considered mental impairments while asking hypothetical questions to the [VE] and included those mental limitations in hypothetical questions to the [VE.]" (*Id.* at 3-4.)[8]

The Commissioner responds that Claimant's step five argument is a red herring because the ALJ decided the case at step four where VE testimony is not required and only made an alternative step five finding. (Doc. 16 at 24.) The Commissioner also argues that because the ALJ properly found that Claimant could perform his past relevant work both as actually and as generally performed at step four, Claimant's argument that that ALJ posed an incorrect hypothetical question is moot. (*Id.* at 25.) In that alternative, the Commissioner argues that even though the ALJ did not include the unskilled work

---

[8] Claimant also continues to raise arguments based on his assumption that the ALJ adopted the 1-2 step limitation from the reviewing consultants' opinions into the RFC. (Doc. 17 at 4 (citing *Dowden*, 2020 WL 6470180 at 7-8).) As previously discussed, there is no indication that the ALJ adopted this limitation into the RFC.

limitation in the hypothetical, Claimant cannot show a reversible error because the jobs the VE identified were all unskilled. (*Id.* at 26.)[9]

> A hypothetical is proper only if it includes all of the claimant's relevant impairments. *See Baugus v. Secretary of Health and Human Serv.,* 717 F.2d 443, 447 (8th Cir. 1983). If the hypothetical does not relate all of a claimant's impairments, the resulting testimony of the vocational expert cannot constitute substantial evidence to support the ALJ's decision. *See Ekeland v. Bowen,* 899 F.2d 719, 722 (8th Cir. 1990).

*Brachtel v. Apfel*, 132 F.3d 417, 419 (8th Cir. 1997). A hypothetical question must include both physical and mental impairments. *Davis v. Astrue*, No. C10-2057, 2011 WL 3678677, at *9 (N.D. Iowa Aug. 22, 2011). In addition, the question must "capture the concrete consequences of the claimant's deficiencies." *Id.* (quoting *Hunt v. Massanari,* 250 F.3d 622, 625 (8th Cir. 2001) (citing *Taylor v. Chater,* 118 F.3d 1274, 1278 (8th Cir. 1997)).

Here, the ALJ found Claimant had a severe unspecified neurocognitive disorder. (AR at 16.) He also found Claimant was limited to unskilled work. (*Id.* at 27.) The hypothetical presented to the VE did not include all of these limitations and was, therefore, deficient. The hypothetical was also deficient because it did not "capture the concrete consequences of the claimant's [mental] deficiencies," if any. *Davis*, 2011 WL 3678677, at *9. In addition, I agree with Claimant that the ALJ's failure to craft the RFC in the usual manner, including vetting via questioning at the hearing by Claimant's advocate, "cast[s] a great degree of doubt on the RFC mental limitations." It is possible that rigorous questioning of the VE at a hearing may have prompted the ALJ to posit a second hypothetical with a more restrictive RFC.

---

[9] The Commissioner also asserts that the ALJ posited a proper hypothetical to the VE because it included all the limitations the ALJ found supported by record as a whole, most of which have already been addressed above and will not be discussed again in this part of the R. & R. (Doc. 16 at 26-30.)

While the ALJ stated that he found Claimant capable of unskilled work, the process by which he came to that conclusion begs the proverbial "chicken/egg" question. Which came first: the VE's conclusion that unskilled jobs were appropriate for Claimant or the ALJ's finding that Claimant had the RFC to perform unskilled work? There should be no doubt that the ALJ's RFC finding came first. *See Dixon*, 353 F.3d at 605 (describing the five-step sequential analysis); (AR at 15 (ALJ decision recognized the "five-step *sequential* evaluation process for determining if an individual is disabled" (citing 20 CFR 404.1520(a) (emphasis added).) In this case, there is a question. Thus, I find that remand is required for the ALJ to craft an RFC that includes mental limitations and to present a hypothetical to the VE based on a complete RFC.

### d. Recommendation

I recommend that the District Court affirm in part and reverse in part the ALJ's decision on this issue. I further recommend that the ALJ remand the case for the ALJ to develop the record regarding how Claimant actually performed the job of unloader/stacker and to present a hypothetical to a VE based on an RFC that contains mental limitations and the consequences of those limitations, if necessary.

## IV. CONCLUSION

For the foregoing reasons, I respectfully recommend that the District Court **AFFIRM IN PART AND REVERSE AND REMAND IN PART** the decision of the ALJ. The case should be **remanded** for the ALJ to (1) develop the record regarding how Claimant actually performed the job of unloader/stacker and (2) to present a hypothetical to a vocational expert based on an RFC that contains mental limitations and the consequences of those limitations, if necessary.

The parties must file objections to this Report and Recommendation within fourteen (14) days of the service of a copy of this Report and Recommendation, in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b). Objections must

specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* Fed. R. Civ. P. 72. Failure to object to the Report and Recommendation waives the right to *de novo* review by the District Court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

   **DONE AND ENTERED** this 5th day of May, 2021.

Mark A. Roberts, United States Magistrate Judge
Northern District of Iowa